Order Filed on October 29, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| In Re: | Case No.: | 25-17258 |
|---|---|---|
| **GARRY WRIGHT,** | Chapter: | 7 |
| | Judge: | John K. Sherwood |
| Debtor. | | |

**DECISION RE: DEBTOR'S EMERGENCY MOTION**
**TO ENFORCE AUTOMATIC STAY**

The relief set forth on the following pages, numbered two (2) through nine (9), is hereby **ORDERED.**

DATED: October 29, 2025

Honorable John K. Sherwood
United States Bankruptcy Court

| | |
|---|---|
| Debtor: | Garry Wright |
| Case No.: | 25-17258 |
| Caption: | **DECISION RE: DEBTOR'S EMERGENCY MOTION TO ENFORCE AUTOMATIC STAY** |

## INTRODUCTION

Garry Wright ("the Debtor") filed this Chapter 7 case on July 10, 2025. [ECF No. 1]. The Debtor was embroiled in a divorce proceeding with his ex-wife ("Ms. Wright") before this bankruptcy case was filed. In those proceedings, the Superior Court of New Jersey ("the State Court") ordered the Debtor to pay $55,000 from his individual retirement account, an exempt asset, to cover arrears due to Ms. Wright in the divorce case. The Court considers whether the amounts due to Ms. Wright are domestic support obligations ("DSOs") which can be enforced against the Debtor's exempt assets.

## FACTS AND PROCEDURAL HISTORY

By Order dated November 22, 2024, the State Court directed the Debtor to pay "*pendente lite* support" to Ms. Wright consisting of all Schedule A expenses, certain Schedule B Expenses, and $5,000 per month. Schedule A expenses are the costs of home ownership and utilities. Schedule B expenses are vehicle costs – Ms. Wright was to pay her own commuting and gas expenses, and the Debtor had to pay the remaining lease payments and insurance. [ECF No. 31-5]. The Debtor did not comply with his $5,000 per month obligation and was $55,000 in arrears as of March 2025. Thus, by Order dated May 30, 2025, the State Court directed the Probation Department to "immediately levy $55,000.00 from [the Debtor's] Fidelity account . . . ." [ECF No. 31-6]. These funds had not been recovered by Ms. Wright when the Debtor (pro se) filed his bankruptcy case on July 10, 2025.

The Debtor filed an Emergency Motion to Enforce the Automatic Stay against the State Court and the Probation Department [ECF No. 31], which had increased the amount of the levy to $70,000 as of August 11, 2025. The Probation Department described the arrears as "child support."

Case 25-17258-JKS    Doc 82    Filed 10/29/25    Entered 10/29/25 13:02:41    Desc Main
Document    Page 3 of 9

Page 3
Debtor:     Garry Wright
Case No.:   25-17258
Caption:    **DECISION RE: DEBTOR'S EMERGENCY MOTION TO ENFORCE AUTOMATIC STAY**

[ECF No. 31-8]. The Debtor contends that the arrears due under the State Court Orders are not "domestic support obligations" and are subject to the automatic stay. *See* 11 U.S.C. § 362(b)(2)(B). He describes the amounts due under the State Court Orders as "temporary or *pendente lite*" obligations. [ECF No. 31].

Ms. Wright filed a cross-motion for confirmation that the automatic stay did not apply because the amounts due under the State Court Orders were DSOs and the levied account was not property of the Debtor's estate. [ECF No. 35]. The Debtor lists his Fidelity IRA as an exempt asset in his bankruptcy petition. [ECF No. 9]. No party has disputed this characterization. The Chapter 7 trustee has confirmed that the matters before the Court do not relate to estate assets. [ECF No. 39]. Ms. Wright also argues that even though the $5,000 per month obligation was set forth in a *pendente lite* order, it is still a DSO. [ECF No. 43].

The Court held a hearing on August 26, 2025, and directed the parties to file supplemental pleadings. These pleadings have been filed and considered by the Court. [ECF Nos. 55, 56, 60, 61]. Generally, Ms. Wright describes the Debtor as a "willfully unemployed" former breadwinner who has breached his financial obligations under the State Court Orders while living a lavish lifestyle. [ECF Nos. 55, 56]. The Debtor denies these allegations and criticizes Ms. Wright's expenditures. He also claims that he has paid more than $250,000 in the divorce proceedings and has been financially drained. [ECF Nos. 60, 61].

To the extent that the Debtor's bankruptcy schedules are accurate, it does not appear that he currently has more than his retirement accounts, his car, and maybe some tax refunds. He listed his take home pay as $1,892 per month, which is not nearly enough to satisfy his monthly expenses. [ECF No. 9]. Though the Debtor reported that he earned almost $275,000 in 2023, his income has

Case 25-17258-JKS    Doc 82    Filed 10/29/25    Entered 10/29/25 13:02:41    Desc Main
Document      Page 4 of 9

Page 4
Debtor:      Garry Wright
Case No.:    25-17258
Caption:     **DECISION RE: DEBTOR'S EMERGENCY MOTION TO ENFORCE AUTOMATIC STAY**

taken a turn for the worse. According to Ms. Wright, the Debtor's income was $400,000 in 2023 and his current employment situation is a deliberate tactic to avoid having to pay support in the divorce case. She says that evidence has been presented to the State Court supporting this assertion, but it is not part of the record here. [ECF No. 56, pp. 2, 3].

The Debtor acknowledges that his monthly expenses include DSOs at $5,065 per month. [ECF No. 9]. It does not appear that the Debtor is currently able to pay the amounts required by the State Court Orders from his monthly income. To the extent payments have been made, savings and retirement accounts were probably the source. Finally, the Debtor owns a home with Ms. Wright valued more than $1.2 million and subject to a mortgage of less than $600,000. [ECF No. 9]. The Debtor says that this property was in foreclosure when the bankruptcy was filed. [ECF No. 9, p. 57]. The Chapter 7 trustee may seek to monetize the Debtor's interest in this property. Ms. Wright's expectations for this property are unknown currently.

The Court is not inclined to rehash the events leading to the separation of the Debtor and Ms. Wright or events that occurred within the divorce proceedings. Those matters have been and will continue to be adjudicated by the State Court. The bankruptcy law issue that this Court will address is whether the obligations due from the Debtor to Ms. Wright under the State Court Orders are DSOs. In that regard, while this Motion was pending, counsel to Ms. Wright wrote to the State Court requesting clarification that the $5,000 per month obligation was a DSO. The State Court replied through a law clerk e-mail dated September 4, 2025, which stated that the $5,000 obligation was indeed support for the Debtor's children. [ECF No. 56-2]. The Debtor does not believe that the Court should consider this e-mail because it is a "post hoc explanation" that cannot be used to cure omissions from the three State Court Orders. The Debtor contends that the e-mail was issued

Case 25-17258-JKS    Doc 82    Filed 10/29/25    Entered 10/29/25 13:02:41    Desc Main
Document      Page 5 of 9

Page 5
Debtor:      Garry Wright
Case No.:    25-17258
Caption:     **DECISION RE: DEBTOR'S EMERGENCY MOTION TO ENFORCE AUTOMATIC STAY**

in violation of his due process rights because he was entitled to fair notice, a hearing, and an explanation of the State Court's reasoning. [ECF No. 60, p. 8].

In the Debtor's bankruptcy schedules, he describes Ms. Wright's claim as a disputed DSO. By way of explanation, he states that the obligations to his children are domestic support but that overdue obligations to his wife are not. [ECF No. 9, p. 19]. The Court is not aware of a legal basis for this distinction. In addition to the $5,000 per month obligation described above, the Debtor was obligated to pay "Schedule A expenses" and some "Schedule B expenses." According to Ms. Wright, the Debtor is in arrears on these obligations of at least $52,547 (Schedule A) and $25,367 (Schedule B). [ECF No. 55, p. 8]. Though the Debtor's response to this allegation is unclear [ECF No. 60, p. 17], he does not dispute that the Schedule A and B expenses are domestic support. These arrears (probably over $80,000 by now) would be enough to exhaust almost the entire Fidelity IRA if the State Court so ordered.

Ms. Wright describes the $5,000 per month obligation under the State Court Orders as "Schedule C" support for the Debtor's children. She claims that total arrears are $75,000. [ECF No. 55]. The Debtor correctly points out that the $5,000 obligation is not specifically described as Schedule C support for the children. [ECF No. 60, p. 5]. The Orders only describe this obligation as "*pendent lite* support." [ECF No. 31-5].

## **JURISDICTION**

Although the Debtor's Fidelity IRA is an exempt asset that will not be administered by the Chapter 7 trustee for the benefit of creditors, this Court has jurisdiction. The Debtor has invoked the automatic stay under § 362 of the Bankruptcy Code and Ms. Wright has cross-moved for a determination that the automatic stay does not apply. The resolution of this issue requires analysis

Case 25-17258-JKS    Doc 82    Filed 10/29/25    Entered 10/29/25 13:02:41    Desc Main
Document      Page 6 of 9

Page 6
Debtor:        Garry Wright
Case No.:      25-17258
Caption:       **DECISION RE: DEBTOR'S EMERGENCY MOTION TO ENFORCE AUTOMATIC STAY**

of the Bankruptcy Code's definition of the term "domestic support obligation" found in § 101(14A). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G) and (O).

## **DISCUSSION**

To protect the interests of a debtor's family and dependents, certain family court disputes are not subject to the automatic stay. Section 362(b)(2) provides that the automatic stay does not apply to proceedings for the establishment or modification of a domestic support obligation. 11 U.S.C. § 362(b)(2). A proceeding to collect a domestic support obligation from property that is not property of the estate is also not stayed. *Id.* "Domestic support obligation" is a defined term in the Bankruptcy Code that covers all obligations in the nature of alimony, maintenance, or support of a spouse, former spouse, or child of the debtor or such child's parent without regard to whether the debt is expressly so designated. 11 U.S.C. § 101(14A). Whether an obligation is a DSO is important under bankruptcy law because DSOs are not subject to the automatic stay (as set forth above), they have top priority (§ 507(a)(1)(A)), and they are non-dischargeable (§ 523(a)(5)). Thus, bankruptcy courts are often called upon to decide whether an obligation is a DSO. The determination is one of federal bankruptcy law, not state law. *In re Gianakas*, 917 F.2d 759, 762 (3d Cir. 1990). Even if obligations from the Debtor to Ms. Wright under a divorce decree or separation agreement are not DSOs, they are not dischargeable in a Chapter 7 bankruptcy case. 11 U.S.C. § 523(a)(15).

Since the State Court ordered the $5,000 payments in question in the divorce proceedings to be made to the Debtor's wife, the key question here is whether the nature of these payments was for the support of the Debtor's wife and children. In *Gianakas*, the Third Circuit described three principal indicators of whether an obligation should be considered domestic support.

Case 25-17258-JKS    Doc 82    Filed 10/29/25    Entered 10/29/25 13:02:41    Desc Main
Document      Page 7 of 9

Page 7
Debtor:     Garry Wright
Case No.:   25-17258
Caption:    DECISION RE: DEBTOR'S EMERGENCY MOTION TO ENFORCE AUTOMATIC STAY

1. The language and substance of the agreement in the context of surrounding circumstances. The Court cautioned that labels given by the parties and state courts might not be conclusive.

2. The parties' financial circumstances at the time of the settlement including employment status and responsibility for child expenses.

3. The function served by the obligation at the time of the divorce or settlement. Daily necessities such as food, housing and transportation are more likely to be support.

*Gianakas*, 917 F.2d at 762-63.

Here, there has not been a final divorce decree or settlement. Thus, the Court must apply these indicators to the three *pendente lite* Orders of the State Court. Both parties have given conflicting views of the circumstances giving rise to the three State Court Orders. The Court does not have access to all of the evidence presented to the State Court and there has been no live testimony. It would not be a wise use of the parties' limited resources at this time to conduct a full-blown evidentiary hearing on whether the Debtor's obligations under the *pendente lite* Orders are DSOs. This is mostly due to the fact this Court may have to resolve this issue once a final divorce decree or settlement has been reached and the Debtor will be liable for obligations that are not DSOs anyway because they are non-dischargeable.

Applying the *Gianakas* factors to this limited and incomplete record, the Court is leaning towards a finding that the $5,000 obligation under the State Court *pendente lite* Orders are support. Most persuasive is the language of the Orders describing the $5,000 payment obligation *as* "*support*." The Court is not persuaded by the September 4, 2025 e-mail from the State Court which should not have been requested by Ms. Wright's counsel while the issue was pending in this Court.

| | |
|---|---|
| Debtor: | Garry Wright |
| Case No.: | 25-17258 |
| Caption: | **DECISION RE: DEBTOR'S EMERGENCY MOTION TO ENFORCE AUTOMATIC STAY** |

Whether or not an obligation is a DSO is a question of bankruptcy law that the Bankruptcy Court must decide. Ms. Wright's argument that the $5,000 obligation was for child support is aided by the fact that she has custody of the three children whose care requires money. Also, it seems that *pendente lite* orders in divorce proceedings should be designed to reasonably preserve the lifestyle and needs of the interested parties until the final divorce decree or settlement.

On the Debtor's side of the argument, the Court notes that he was responsible for the children's tuition (on top of the Schedule A and B expenses) and Ms. Wright is employed. Did the State Court expect that she would pay the childcare expenses from her own pocket? Another question is whether the State Court imputed income to the Debtor because it found that he was deliberately unemployed and acting in bad faith. *See* 11 N.J. Prac., Family Law and Practice § 31.13. The Debtor reported no income in 2024 and is currently making less than $2,000 per month. Absent bad faith, it is hard to understand why the Debtor would be saddled with such high monthly support obligations.

These thoughts are in no way intended to influence or criticize the State Court. They just illustrate that at this point, it is not 100% clear that the $5,000 per month obligation is a DSO. *Gianakas* noted that in some cases, state courts might adjust alimony awards depending on the amount of marital assets available for distribution. 917 F.2d at 763. There is no reason why the State Court should not move the divorce case to a final resolution either by an agreement or divorce decree. To the extent the Debtor is not satisfied with decisions of the State Court, his recourse is in the State appellate system. This Court's limited role here is to look at the State Court decisions and, to the extent they impose obligations on the Debtor, decide whether they are DSOs

Case 25-17258-JKS    Doc 82    Filed 10/29/25    Entered 10/29/25 13:02:41    Desc Main
Document    Page 9 of 9

Page 9
Debtor:      Garry Wright
Case No.:    25-17258
Caption:     **DECISION RE: DEBTOR'S EMERGENCY MOTION TO ENFORCE AUTOMATIC STAY**

applying bankruptcy law. If they are, the unpaid DSOs can be enforced against the Debtors exempt assets and will have priority in the Chapter 7 case.

Finally, with respect to the specific matters before it, the Court finds that considering the overdue Schedule A, Schedule B, and possibly Schedule C expenses, there is no doubt that the Debtor owes Ms. Wright and his children at least $55,000 of domestic support. Thus, the Court holds that Ms. Wright, the State Court, and the Probation Department can enforce the State Court's Orders and levy on the Debtor's Fidelity IRA in the amount of $55,000. Ms. Wright's rights to levy on the rest of the Debtor's exempt assets are fully preserved as are the Debtor's defenses. Once the State Court divorce proceeding results in a final judgment or settlement, this Court can, if necessary, determine whether the obligations under such decree or settlement are DSOs and apply credit against the Debtor's DSOs as appropriate.

## **CONCLUSION**

For the reasons set forth above, the Debtor's motion is denied subject to his right to challenge future claims against his exempt assets. Ms. Wright's cross-motion is granted to the extent set forth above.